437 So.2d 1196 (1983)
FRANK L. BEIER RADIO, INC.
v.
BLACK GOLD MARINE, INC.
No. 83-CA-335.
Court of Appeal of Louisiana, Fifth Circuit.
September 13, 1983.
Writ Granted November 18, 1983.
*1197 Mitchell J. Hoffman, Ann Wise, McCloskey, Dennery, Page & Hennesy, New Orleans, for Black Gold Marine, Inc., defendant-appellant.
P. Keith Daigle, Schudmak & Cusimano, Metairie, for Frank L. Beier Radio, Inc., plaintiff-appellee.
Before BOUTALL, KLIEBERT and GRISBAUM, JJ.
BOUTALL, Judge.
Black Gold Marine, Inc. appeals from a judgment against it on open account in the amount of $21,361.11, including $2,970.00 in contractual interest, and 30% attorney's fees, in favor of plaintiff-appellee Frank Beier Radio, Inc. For the reasons which follow we affirm in part, reverse in part, and amend in part.
Appellant Black Gold Marine, Inc. (hereinafter Black Gold) is a corporation owning a number of marine vessels connected with service of the off-shore oil industry. Between 1977 and 1980 the company did a substantial amount of business with appellee Frank Beier Radio (hereinafter Beier), a marine electronics sales and repair firm.
The Beier officer testifying at trial stated that throughout the course of their business dealings together Black Gold had often been slow in payment. Between 1978 and 1980 Black Gold ran up a total of $18,391.00 in unpaid invoices. Early in 1981, after several meetings between officers of the two firms in an attempt by Beier to speed up payment, the two companies broke off relations altogether and this suit followed.
Beier sued Black Gold on open account for $18,391.00, together with interest at 1½ percent a month totalling $2,970.00, and 30% attorney's fees. The trial judge held for Beier, awarding the invoice sum, interest, and attorney's fees. He disallowed Black Gold's counterclaim for damages due to faulty repairs and downtime, as well as a claimed set off for Black Gold equipment in Beier's possession (due to unpaid repair bills). The trial judge did allow defendant Black Gold to try to prove faulty workmanship as a defense to the debt, but held that defendant had not met its burden of proof in this regard.

ISSUES ON APPEAL
Appellant has specified thirteen errors for our review. For the sake of brevity, and because we find the majority of alleged *1198 errors to be without merit, we would group the issues into three categories:
Issues 1-7 as stated in appellant's brief revolve around the trial judge's rulings to disallow appellant's "late-blooming" counterclaim, set-off for equipment in appellee's possession, and his ruling that Black Gold did not carry its burden of proof on the defense of faulty repair.
Issues 8-12 deal with whether the contractual relationship between the parties was one of open account and whether Beier is entitled to contractual interest as well as attorney's fees under La.R.S. 9:2781.
Issue 13 deals with the alleged excessiveness of the 30% attorney's fees.
With respect to Issues 1-7 as enumerated above, we find appellant's specifications of error to be without merit. The law is well settled that the trial court has a great deal of discretion to allow or disallow amendments to pleadings and we are satisfied that in this case there was no abuse of discretion. See Louisiana Code of Civil Procedure articles 1151, 1155; White v. Cumis Insurance Society, 415 So.2d 574 (La. App. 3rd Cir.1982).
As to the trial court's ruling that appellant did not carry its burden of proof on the defense of faulty repair, we find no manifest error.
With respect to Issues 8-12, we find that some aspects of the contractual relationship between the parties and the parameters of the agreement between them require closer inspection.
From our review of the record, we conclude, as did the trial court, that Beier and Black Gold indeed had an open account relationship. For an explanation of the characteristics of an open account, see Monlezun v. Fontenot, 379 So.2d 43 (La.App. 3rd Cir.1979).
We are compelled to disagree, however, with the trial court's conclusion that because Black Gold was bound to the principal debt by the signature of its agents on the individual work orders, it was also bound to the 1½ per month interest provision and 30% attorney's fees.
The interest and attorney's fees provisions were strongly contested by appellant at trial and on appeal. They arise out of the following language printed at the bottom of each of Beier's work orders containing an enumeration of the work done on each service call:
Terms: Net cash upon receipt of invoice 1½% per month interest after 30 days plus 30% attorney's fees if placed into the hands of an attorney for collection.
Testimony at trial from both sides established that the parties had never entered into a written contract covering the terms of their business relationship. Additionally, neither the officer from Black Gold nor the officer from Beier could recall ever discussing the interest and attorney's fees provisions. Their testimony established that the normal course of business was for Beier service people to seek out the highest ranking officer on board a Black Gold vessel to sign the work order for goods or services received.
We interpret the jurisprudence to require that contractual provisions for conventional interest and attorney's fees must be specifically agreed to between the parties. S.E. Hornsby, Etc. v. Checkmate Ready Mix, 390 So.2d 213 (La.App. 3rd Cir. 1980). That agreement may be actual (i.e. oral or written) or implied by means of codal presumptions, La.Civil Code arts. 1816, 1817, or by means of a factual determination by the trial court. La.Civ. Code art. 1818. See Pooler Building Materials, Inc. v. Hogan, 244 So.2d 62 (La.App. 1st Cir.1971).
As we have stated, there was no actual agreement for conventional interest, either oral or written. There remains an issue of implied intent under the codal presumptions of Civil Code arts. 1816 and 1817. They provide in part the following:
Article 1816. Actions implying intent to contract
Actions without words, either written or spoken, are presumptive evidence of a *1199 contract, when they are done under circumstances that naturally imply a consent to such contract....
Article 1817. Silence and inaction as implying consent
Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation; if, after the termination of a lease, the lessee continue in possession, and the lessor be inactive and silent, a complete mutual obligation for continuing the lease, is created by the act of occupancy of the tenant on the one side, and the inaction and silence of the lessor on the other.
It is contended that Black Gold's silence in not making objection to the provisions on the invoices over the period of the transactions implies consent to the obligations of those provisions. We disagree. The Vice-President of Beier testified that until the matter came to suit, the interest provision was never enforced against Black Gold, and further it was only selectively enforced against other customers. We are loathe to imply consent through Black Gold's actions or silence, as provided for in the above cited codal articles, when Beier never enforced the interest provision during the three years that the companies did business together. Had Beier demanded interest during that time, and had Black Gold paid it on one or more occasions or perhaps failed to object to it, our result might well be different. However in this case, the failure of the purchaser to object is equally balanced by the failure of the seller to demand the interest.
We hold also, for the same reasons, that the facts in this case do not support a finding of implied consent under La.Civil Code art. 1818.
Accordingly, we conclude that plaintiff is not entitled to the interest stated in its invoices and reverse that portion of the judgment appealed from. We think that the result we reach is a sound one under the law[1] and in terms of commercial dealings. Commercial entities doing business with one another presumably have a level of business sophistication that should enable them to agree to the express terms of their business relationship at the outset. By analogy, the terms governing a consumer credit transaction are as a rule agreed to prior to the transaction, by means of an application for credit or a signed contract, or by specific provisions of the law. It cannot be onerous to require a commercial dealer, who wishes to change the contractual agreement, to notify the customer of the proposed change timely.
The proper interest to be assessed in this case is legal interest from time when due. La.Civil Code art. 1938. Proper demand was made on June 9, 1981 and interest became then due. See Succession of Drake, 359 So.2d 249 (La.App.2d Cir.1978).
Finally, with respect to attorney's fees, it logically follows that since appellant is not bound by the interest provision, neither is it bound by the 30% attorney's fees provision contained on the work orders. Appellant is, however, liable for reasonable attorney's fees on an alternate basis; namely, La.R.S. 9:2781. That statute provides for an award of attorney's fees in pertinent part as follows:
When any person fails to pay an open account within thirty days after receipt of written demand therefor correctly setting forth the amount owed and a copy of the invoices in support thereof, that person shall be liable for reasoanble attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant.
The trial court found that appellee Beier had complied with the above requirements and awarded attorney's fees in the amount of 30%. We affirm that award with the following clarifications.
Appellant has argued, at trial and on appeal, that appellee failed to comply with *1200 the requirements of La.R.S. 9:2781 and is therefore not entitled to an award of attorney's fees. Appellant contends that Beier did not make written demand for the correct amount because the demand letter contains a demand for interest for which Black Gold was not liable.
Though we have held above that Black Gold is not liable for the conventional interest at 18% per annum, we find that its argument with respect to attorney's fees lacks merit. The demand letter, accompanied by a sheaf of supporting invoices, states the principal due is $18,391.00. The trial judge found that this was in fact the principal due, and that award remains intact on appeal. Appellee Beier has complied with the terms of La.R.S. 9:2781. The fact that a separate item of interest in the amount of $2,970.00 is enumerated in the demand letter does not change the result. Appellee reasonably believed under the circumstances that such amount of interest was owed to it; moreover, it is abundantly clear from the written demand and invoices exactly what principal was due and had been due for many months.
We are well aware that Louisiana jurisprudence requires that La.R.S. 9:2781 be strictly construed. Scarborough v. Nelson, 371 So.2d 1261 (La.App. 3rd Cir.1979). However, our review of the existing caselaw has not disclosed a case in which attorney's fees were denied with circumstances similar to the instant one; i.e. where a creditor has sent written demand correctly setting forth the principal amount due, as well as a correct amount of interest pursuant to the terms stated on its invoices, which interest is subsequently on appeal determined to be uncontracted for. In Scarborough, the creditor was held not entitled to attorney's fees because the record reflected that the written amount demanded was clearly incorrect by $1187.68. The creditor had refused to credit the debtor's account with premium refunds due to him from cancelled insurance policies, arguing that the refunds were not yet owing on the date of the demand letter. The record disclosed that all the insurance policies in question had been cancelled by the date of the demand letter, and that the debtor had obviously been entitled to the credits by that date.
In Roberts v. Paciera, 411 So.2d 650 (La. App. 4th Cir.1982), also cited by appellant, attorney's fees were disallowed because no evidence was presented in the trial court as to compliance with La.R.S. 9:2781. Such is not the situation in the case now under consideration. Finally, in Capital Recovery Assistance, Inc. v. Nelson, 424 So.2d 357 (La.App. 2nd Cir.1982), attorney's fees were disallowed because the creditor did not send invoices in support of the written demand.
In this case the creditor has correctly set forth the amount owed and the specific invoices showing the debt. He is entitled to reasonable attorney's fees. The trial judge set the fee at 30% of the amount claimed, having found:
"... that plaintiff has complied with the requirements of La. (sic) 9:2781 entitling it to reasonable attorney's fees for its collection, we set the amount of attorney's fees to be awarded at thirty percent of the amount claimed. We find such a fee to be `reasonable' in light of the fact that this case was in litigation for approximately one year; the fact that the Court views the majority of Black Gold's defenses to the payment of that account as tenuous and dilatory; and the fact that the work orders signed by Black Gold's representative, referred to above, provided for attorney's fees in the amount of 30% for all unpaid amounts."
We quote this language to show that the trial judge did not simply set 30% attorney's fees because it was specified in the invoices. The fee was based on L.R.S. 9:2781. The specifying of 30% on the invoices was only one facet of the determination of amount.
We have reviewed the record in consideration of the particular ability of a trial judge to evaluate the work done, the results reached, skill of the attorney, etc., and find no error in his assessment of 30% of the amount Beier may recover under the judgment, as a reasonable attorney fee.
*1201 Accordingly we reverse and annul that portion of the judgment awarding plaintiff interest at the rate of 18% per annum and amend by reducing the amount awarded, rendering judgment in favor of Frank L. Beier Radio, Inc. against Black Gold Marine, Inc., in the amount of $18,391.00 plus attorney's fees of 30% of said amount, plus legal interest from June 9, 1981, until paid, and for all costs of these proceedings in both courts.
REVERSED IN PART; AMENDED IN PART, AFFIRMED IN PART.
NOTES
[1] See Pooler Building Materials, Inc. v. Hogan, supra; First Wisconsin National Bank of Milwaukee v. Novem, Inc., 349 So.2d 370 (La.App. 4th Cir.1977); Succession of Drake, 359 So.2d 249 (La.App.2d Cir.1978).